The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case for argument this morning is 20-1771, Vestal v. Treasury. Miss, is it Weiss or Weiss? It is Weiss, Your Honor. Okay, whenever you're ready. Thank you, Madam Chief Justice, and may it please the court, I represent Petitioner Sarah Vestal. The administrative judge committed legal error in this case because in the context of IRS PII disclosure, the intentionality factor explicitly includes knowledge that the act was in violation of the rule. And that is specifically stated in the IRS manual that controls this matter. The charge was specifically upheld on intentionality even though the administrative law judge and the deciding official acknowledged that they did not know whether she had committed this with knowledge that it was a violation. And the administrative judge credited her testimony that she did not. Miss Weiss, this is Judge Chen. As I understand it, the IRS penalty guidelines permit removal even of a first offense of an unauthorized disclosure of taxpayer information that is intentional and that the penalty guidelines do not require that the disclosure be willful. Am I understanding the penalty guidelines correctly? Well, Your Honor, it's my contention that it is slightly different that the table of penalties explicitly includes a subsection A that refers to careless or reckless violation of the rule, whereas subsection B refers specifically to intentional. And the question is what does intentional mean? And in this context of the IRS, I would argue that it means knowledge of the rule. In this particular case, the A.J. found that she was unaware of the application of this rule. Miss Weiss, this is Judge Prost. Can I ask you about that because I think at best there's some ambiguity. I mean, the word willful is used and willful seems to be defined as intentionally with full knowledge that it is wrong. But that doesn't mean that that's what intentionally necessarily consists of. So like Judge Chen, I'm wondering why intentional is not broad enough to clue. It's sort of the opposite of inadvertent. It wasn't by my mistake you didn't know that you were disclosing it, but you intentionally knew you were disclosing it. So I'm wondering why you don't think there's enough room in the guidelines and the other documentation to construe intentional in that more limited fashion than you would have us do. Well, I would agree with you, Chief Justice Prost, because in this particular case we are addressing an IRS disclosure issue. And while intentionality generally is broad enough to cover simply pressing the button as an intentional act that sent the PII, in the context of IRS disclosure there is a significant difference between the two as set forth not only in the IRS manual but also in the table of penalties. So while in other contexts it may be that intentionality is broad enough to cover simply a volitional act, in this particular context Ms. Vestal argues that it is not. Well, why even if we were talking about willful, this is Judge Prost again, you say willful is knowledge that it was wrong. Why isn't that sort of like enough to – why isn't willfulness broad enough to say knew or should have known it was wrong? Because if the standard were to be should have known, then I think you've got a problem, right? Because at a minimum your client, if she had any doubt which one could argue she should have given all of the rules and the training, she should have at least asked if it was permissible as opposed to doing it without asking. Should have known, Your Honor, would be a negligence standard, and it's possible that in another context one might argue that a willful action is also negligent. I think this question goes to the clarity of the notice of the rule, and Mr. Dubois, her supervisor, specifically testified that the rules for disclosure are complicated and confusing in this context. He was not aware of the correct application in an attorney-client situation, and even the assistant U.S. attorney who interviewed Ms. Vestal for possible felony indicated that it was a simple mistake. She had not had training with regard to attorney-client privileged situations, and she was involved in a very upsetting situation where she had been accused of wrongdoing, and she was asked to send information to an attorney, and she did so. She was wrong, and she has acknowledged that that was wrong. She is not contending that this was in some way correct or that her belief that it was correct mitigates anything. But the question here is, was it intentional? Given the testimony in this specific case, we cannot argue that she should have known. While there can be circumstantial evidence of intent, it cannot just be assumed, and there are a number of cases involving specifically the IRS. For example, the Albritton case from 2008 from the Federal Circuit, 287 Federal Appendix 852, an unpublished decision where an IRS agent admitted that she attempted to locate her son who suffered from bipolar disorder. She acknowledged that she had done it, and she knew it was wrong, but she offered an excuse that was not sufficient to change the penalty of removal. It could depend on the circumstances, and there's a deferential standard, is there not, in this context, a quite deferential standard that would allow it to the supervisor? I mean, if the supervisor or the deciding official thinks this woman has mitigating circumstances that might have allowed her to just do it, but that's the discretionary, under an abuse of discretion standard, or at least a deferential standard in terms of the deciding official deciding whether or not removal is appropriate, is it not? Yes, there is a deferential standard, but the question is whether or not a deference is owed in this particular case in a situation where the supervisor testifies that he does not know whether she had any intent to violate the law, but simply assumed it because he felt that her mistake was a serious one. At the same time, the administrator... Yes. This is Judge Plager. In that connection, it's interesting that Mr. Dubois, or Dubois, I'm not sure how he pronounces his name, the deciding official testified that if she had not willfully committed this offense, he would not have removed her. The question was put to him, and he said, yes, that's most likely the case. This is in the appendix at 67. So that introduced the willfully aspect of the disclosure as distinct from intentional. In that connection, while I have your attention, Ms. Weiss, let me ask you several questions about the record that I'm puzzled about that relate to all of this. Specifically, nowhere in your brief, or in the government's briefing, or even in the AJ's opinion, did I find, and perhaps I missed it, but I couldn't find any description of exactly what it was that Ms. Vestal actually transmitted to you, and that you then transmitted. I take it back to the government as part of your explanation of why she hadn't responded quickly on the day he said, Mr. Bunn said you had four hours in which to respond. I couldn't find any description of any detail at all of what it was she transmitted. She might have transmitted an entire record, treasury record, perhaps she transmitted the entire tax return that the taxpayer – by the way, I couldn't even find who the taxpayer, the kind of taxpayer it was. But I gather from what I found ultimately in the supplemental appendix, the taxpayer was a business, not even an individual. Can you enlighten the court as to exactly how many pages and what the document was that caused this whole uproar? Perhaps you know. Yes, Judge Plager, I do. And I will look, when we have a moment, to find where in the appendix or appendices we can find this. But it was, as far as I recall, a one-page document from her calendar indicating where she was at the time that her supervisor made this request. And she could have redacted it, but she did not. It would have made no difference in terms of the defense of her suspension had she redacted it. And that was the item that was sent. Are you saying that the item that was sent was not part of the taxpayer's tax return or tax documents, but was a government record that she made with regard to her own personal activity that she uses as part of her own record? Is that what you're saying? Yes, Your Honor, that's what I'm saying. And subject to government counsel's possibly correcting me, that is our contention. Well, your contention, or that is what the record somehow should show. And is it the case that the taxpayer in this case was a business and not an individual? Do you understand that? I do understand that. I will point to Appendix 3 to the Administrative Judge's decision in which she noted that the removed item was an examining officer's activity record from Taxpayer A's file. And that was a one-page calendar entry. I can ask the government this question, but do you happen to know if that was your standard Form 9984 that all of the examining officers use for their own files? Is that what that was? I'm unaware of that, Your Honor. It looked to me like a calendar entry. But, Ms. Weiss, I didn't see you make the argument anywhere that you were disputing that the disclosure here was the type of disclosure that might result in some sort of felony, if you were pursuing that ground, that this is a clearly prohibited disclosure. I didn't see you arguing with that. I thought your argument was that she thought it was protected by attorney-client privilege, but not challenging the privacy and the discreteness of the disclosure itself. Am I right about that or wrong? That's correct, Judge Post. She is not contesting that. She should not have sent it. She's not saying that that was in any way proper. Well, the question, though, that I'm puzzling about, and this is Judge Plager again, is not whether, clearly she concedes that she sent this, and I take it you concede that you sent it on to the government, which is, I take it, what triggered the whole uproar. Clearly she concedes that she sent this. The question goes to the penalty, whether the penalty of removal is appropriate in light of all the facts and circumstances that were being presented. You didn't raise this question at all. Is that right? Is that a correct statement, Ms. Weiss? No, Your Honor. I did raise the question of the appropriate penalty, and that in Appendix 37, disclosure due to carelessness, recklessness, or negligence is written reprimand to 14 days suspension. I see that my time for rebuttal has begun. This is Judge Post. We'll reserve your minute of rebuttal, but let me just ask you about that. Certainly you were arguing about the severity of the penalty. My question went to your suggestion that the penalty should not have been so severe because the actual document disclosed was somehow not the type that you would be compelled to maintain confidentiality. You didn't make that argument. No, we did not make that argument, Your Honor. Okay, thank you. We'll reserve your rebuttal, and let's turn to the other side. Ms. Westerkamp? Yes, good morning, Your Honor. Just to start off with here, I think the main question is that there was no dispute below as to whether this was a taxpayer document. It was protected by PII. It had the personal identifiable information in it. It was a taxpayer record that actually did disclose that a certain taxpayer was under investigation. Again, Internal Revenue Code 6103 is what really controls here, where that specifically explains that if you are an IRS revenue agent, such as Ms. Bessel, that you are prohibited by law from making unauthorized disclosures. And part of that is that with the situation that happened here, Your Honor, Ms. Bessel could have easily gone to the Office of Disclosure Services to ask or inquire as to whether attorney-client privilege would permit a disclosure of the type that she did, but she did not, in fact, go to the Office of Disclosure Services to ask if she could do that. Ms. Westerkamp, this is Judge Plager. You don't dispute, I take it, that this was an examining officer's activity record. The document that was actually sent was the record that they keep and that no doubt should not have been sent. Nobody's quarreling with that, I take it. But you don't dispute the fact that that's the kind of record that was sent, do you? No, I do not, Your Honor, and I would additionally point to Supplemental Appendix pages 22 and 23, where Agency Counsel below identified it as an examining officer's activity record, and so that is what the document was that was sent to Ms. Weiss. And Ms. Westerkamp, while I have your attention for the moment, you don't dispute that Mr. Du Bois testified that if, quote, if she had not willfully committed this offense, you would not have removed her answer, quote, yes, that's most likely the case, unquote. So he understood that willfully was a factor in his decision. You're not disputing that, I take it. No, I'm not, Your Honor, and I think that as we argued in our brief that this specific argument was not raised below. That is the question of whether there was intent to violate the law with the element of willfulness. But even so, when you look at Mr. Du Bois' testimony, and it's at pages, Supplemental Appendix 57 and 66, you have his testimony where he said this required thought for Ms. Vestal to actually transmit the tax record to her attorney. And then he also considered her disclosure to be willful rather than inadvertent due to the fact that she had had extensive training on the fact that you are prohibited by law from making disclosures. And so he did consider it to be willful in the sense that, and I think I can quote that he said it was a no-no, and also that it's the sacrosanct nature of taxpayer information as such that this knowing transmission to someone is what really made it an unauthorized disclosure. And I think, Your Honor, to touch on a little bit, although these specific arguments weren't raised below, I think that the administrative law judge did look at Ms. Vestal's defense that she thought it was covered by attorney-client privilege. And I think that you have on pages 19 and 20 of the appendix, which is the decision, you have an explanation of where the ALJ, and I can quote here, that she credited Ms. Vestal's testimony that her disclosure of taxpayer information was not intentional in the sense that she did not intend to violate a law or policy. However, preponderant evidence shows she acted intentionally in that she knowingly transmitted a taxpayer's record to her attorney, and it follows with that Ms. Vestal may have been mistaken as to the significance or import of her action, but that action was knowingly taken. There's no question that the action was intentionally taken. Part of the question in a case like this, it seems to me, and perhaps you disagree, Ms. Westerkamp, is the purpose for which the error or the wrong was done. And that is, I take it it was not done for any purpose of harming the taxpayer, but rather was for the purpose of providing information to the government about, in defense of why she didn't respond within the four-hour drop-dead date that her supervisor had given her. Do you disagree, I assume you would, with the petitioner, Ms. Weiss' statement in her supplemental appendix that, quote, the heart of this case is whether or not this was a willful disclosure, unquote. Do you disagree with that statement? Your Honor, I disagree. I think in the sense that, again, it is a willful disclosure because Ms. Vestal did intentionally transmit this information, and I would add that, as Your Honor mentioned... Ms. Westerkamp, this is Judge Chen. I'm getting confused by your answer because Ms. Weiss, your opposing counsel, is making a very big deal over a distinction between intentional actions and willful actions. And that's why the other side's argument is premised on the fact that if her penalty, her removal is due to a willful act, then your side needed to prove that she knew that her intentional act was wrong and was illegal and was actually subject to criminal penalties. But as I understand Mr. Dubois' deciding official decision and the board's decision, neither of those ever expressed or relied on an idea that the actions here were done willfully, were done with knowing intent for violating a law. Instead, what we're talking about are merely intentional acts intending to transfer PII information of a taxpayer in an unauthorized manner. So when I hear you mixing willfulness and intentionality, I'm getting confused. And Your Honor, Judge Chen, I can maybe clear that up. So I think the place to start is that in the IRS manual that Ms. Vestal cited, it first starts with a disclosure as either made inadvertently or intentionally. And so you have to first figure out what bucket you fall into. Before you get to the manual, I just want to understand what the government's view here is on whether you believe that Ms. Vestal was properly removed because the government believes her actions were willful. What's the answer to that? Your Honor, at one time, I can only rely on the testimony of Mr. Dubois in the sense that I believe he'd been asked if he considered her conduct to be willful, and he said yes. Ms. Westerkamp, what matters is what did the deciding official say in the decision on whether or not this was some type of misconduct, and then what the penalty would be for that misconduct. What did that decision document say? And that's the Supplemental Appendix 5 through 9, Your Honor. Yes, 5, 6, 7, yes. What does it say there? Yes, and so where it refers to the reason for removal is the disclosure of taxpayer information, and then he went through the Douglas factors. And again, I think the nature and seriousness of the offense is where he explains that her, let's see here, she intentionally disclosed taxpayer information to your individual attorney for personal use, and this is at page 6 of the Supplemental Appendix. And I think that's why the standard, even in the penalty table, is intentional or it's inadvertent. And then I know that with some of the arguments Ms. Vestal has raised on appeal has brought in, well, now there's some willful element to it, but when it comes to what happened here, as Mr. Dubois testified at the hearing, he considered an inadvertent disclosure would be, for instance, sending the wrong taxpayer document to someone or mis-keying a number if you're faxing something or transposing numbers. But here, Mr. Dubois testified that he did consider her defense that she was trying to defend against this proposed suspension, but considered that her 10 years of training where there's a prohibition against disclosure of taxpayer information. Judge Proust, let me just interrupt you there. I understand Judge Chan, and I think I agree. I think the government may have carelessly equated the words intentional and willful. But, you know, the problem we have is that the IRS manual defines willful as having full knowledge that it is wrong. So that's why intentional becomes a key word and willful becomes a problematic word. Now, I read, and I wonder if you agree with me, I read Mr. Dubois' testimony as being slightly confusing, but not that much. I think Ms. Vestal's lawyer in that deposition was using the word willful, and so he adopted the word in his testimony. But having read the testimony, I think it's clear that Mr. Dubois understood willful in that context to mean intentional. And he was quite clear that disclosing confidential information is really bad, and it was enough that she disclosed the information even if she misunderstood the rules. So that's my kind of take on it, and I wonder if you agree or disagree, because your use of willful and intentional synonymously kind of made the issue more confusing for us. And I apologize for that, Your Honor. Thinking back, I think I did answer yes to willful. But again, with this, I think in the context of how the IRS manual fits into it, it's kind of just a guidepost from soup to nuts about how the agency works. And for instance, if there's some disclosure, how you should report it. And I think what's important here is that Ms. Vestal never actually reported this unauthorized disclosure, and it only came to the agency's attention when Ms. Weiss appended it to a response to a different document. Ms. Vestal, can I? This is Judge Klager again. Let me clarify. Would you please clarify for me this? The Treasury Inspector General for Tax Admission and the U.S. Attorney apparently investigated the question of whether this was a criminal, willful violation of the law. And as I read the record, they concluded, to quote the U.S. Attorney, this was a simple mistake due to the stress of the hostile environment, unquote. This is at Appendix 78. That puts the criminal division of the Justice Department at odds with the civil division that you represent. Do I misunderstand what's going on here? No, Your Honor. So the TIGTA was informed of this, and in addition, the AUSA did decline to prosecute. But I think you had the same thing happen in the Zing case, Your Honor, and that was the instance where there were 1,300 disclosures of taxpayer information, where even in that case, the AUSA had declined to prosecute. And so I don't think that you necessarily have to have a prosecution for every single disclosure in order for the agency to determine that a reasonable penalty is removal, because obviously an employee working for Treasury with IRS is different than any kind of decision by the Justice Department to pursue criminal prosecution. And I think at the end of the day— Ms. Westerkamp, this goes back to the very important distinction between the words willful and intentional, correct? Willful makes you subject to criminal penalties. It's a felony under the statute to willfully disclose PII in an unauthorized way. Mere intentional disclosure, not willful, only leads to a removal. Maybe civil penalties, but not criminal. Is that right? Again, yes, in the sense of—well, there's also prosecutorial discretion, too, Your Honor. And I think with anything— That's fine. We're talking about the meaning of the words willful and intentional in the context of unauthorized disclosures of PII by IRS agents. And, Your Honor, with what I can fall back on is that in this particular instance with the testimony— No, I just need a yes or a no to my statement slash question. Isn't this true that there's a very clear and important distinction? It may be subtle to some, but nevertheless very important, the difference between willful disclosures and intentional disclosures. Willful disclosures lead to criminal prosecution. Non-willful but intentional disclosures do not subject you to criminal penalties. But under the statute, they can result in a removal from your position for a first-time offense of an intentional disclosure. Yes. Is everything I'm saying correct? I would agree with you, Your Honor. And I would just add, however, that in this context, unlike cases such as Parsons, which recited in the brief by the appellant, this was an instance where the entirety of what happened was considered by the deciding official, Mr. Dubois, where he, again— And I would note, too, that there were resources for Ms. Vestal to go to. And she had used those resources previously if she'd had questions about whether this was a covered situation for disclosure. And I think, although this was one taxpayer that was affected, there is clearly an important public policy purpose behind keeping tax information confidential, since we do operate in a voluntary system where when we file our returns, I think it's been extended to May, that we are doing so with the full knowledge that it will be kept confidential and will be protected. And so I think that when Your Honors look at the penalty of removal with the nexus of this happening during the course of her work and having the 10 years of training of knowing that this is an absolutely sacrosanct thing that you cannot disclose taxpayer information, I think that, especially with the deference accorded to the agency decision, that this court should affirm the penalty of removal. Thank you. Thank you. Ms. Weiss, you have a minute left. Thank you, Your Honor. I would simply note that in Appendix 5 through 8, it makes no reference to willfulness. It only references intentionality, as does the Administrative Law Judge's opinion, and in doing so makes an error because it does not address the issues raised in the IRS manual. I would also note in the Zing case, there were 1,300 disclosures. They were in the newspaper. The IRS had to pay $1,000 for every one, and she knew that she required certain authorizations and didn't get them. Let me ask you, Ms. Weiss, let me ask you, I mean, there are two sort of concurrent streams going on. One is what the deciding official and the people that took this action thought she was doing, and the other is kind of the confusion in the manual. It seems to me there's very little, there's no confusion that they understood and appreciated that this was intentional, but that she said, and they didn't read the fact, that she thought that it was okay because it was attorney-client privilege. That was known and understood, and I think accepted. So it's clear that the agency took its action and said it's still intentional. She should have, at a minimum, inquired. How do you get around there? How is anything in the manual or the code that would preclude the agency in its discretion for deciding that intentional, not willful disclosure is sufficient to remove someone? How are we to second-guess that determination in these circumstances? Because it must be consonant with the agency table of penalties, and as Mr. Dubois said on Appendix 58, while he didn't have the table in front of him, he said it certainly wasn't suggesting that a first penalty would require removal. And that is subsection A of the table of penalties, reckless, careless, negligent. So he was aware of the distinction, but he simply used a different standard in which pressing the button intentionally was sufficient, and her knowledge of the error was meaningless, and that is legal error, Your Honor. Tell me again what you're pointing to, that the agency is precluded from firing someone because when it's intentional under the circumstances here versus willful, that she had a reason that she didn't know. She assumed, misassumed, that attorney-client privilege would protect her here. Point me to where you're saying that the agency cannot fire someone for the kind of intentional disclosure under these circumstances. Where is it in the manual? Where is it? It is in the manual at IRM 11.3.1.9, Section 1, where it says, Unauthorized access or disclosure is willful when done voluntarily and intentionally with full knowledge it is wrong, and further, subsection .10, subsection 3 says, Generally, employees commit inadvertent disclosure errors once, e.g., because of a misunderstanding of rules and procedures, and no further corrective action is necessary once the employee and the manager discuss the matter. That is in my brief. Okay. I guess the first thing you cite does not say anything to me, does not speak to me, about how intentional disclosures, even if they're not willful, would not be sufficient for removal. And on the second, it says inadvertent or intentional. But inadvertent is when you mistakenly, I mean, if she had sent her lawyer some documents, and by mistake this document was included in that, that would be inadvertent, right? But she knew she was sending you, her lawyer, the prohibited documentation, right? That's correct. And she acknowledged that this was intentionally sent in the sense that she pressed the button. But had she known that she knew what she was sending her lawyer? Yes, she was aware. Absolutely. She just neglected to do what I think all of the training says, that if there's any doubt or you're going to do something outside of the lines, you should go to this, what is it, a disclosure? They have like a hotline that you're supposed to ask someone whether or not, in fact, you can disclose it under particular circumstances. Am I right about that? That's correct. And she had, in fact, used it previously, which demonstrates that she did not have any idea that what she was doing was wrong. She had no doubt that it was fine. Ms. Weiss? And she didn't ask anybody, but that was a mistake. Yes? When I look at the penalty table at supplemental appendix page 12, essay 12, in the table for the category intentional disclosure of information to unauthorized persons of tax or other personally identifiable information, the penalty there is removal. Is that right? First offense, it's a removal. Yes, that's correct. Subsection B, yes, Your Honor. Okay. That's all. Thanks. Okay. Thank you. Thank you. We thank both sides, and the case is submitted.